IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLY D. S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-724-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in April 2019 (Tr. 15). Plaintiff's application was denied and he sought reconsideration. Defendant issued a *Notice of Disapproved Claim* dated May 31, 2019 (Tr. 117). After holding an evidentiary hearing, ALJ Michael Worrall issued an unfavorable decision on March 30, 2020 (Tr. 12-34). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. Period of disability.

2. The ALJ failed to properly evaluate Step 2 of the sequential evaluation.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform.

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.

*Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

In his opinion, ALJ Worrall followed the five-step analytical framework described above. He determined Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 23, 2015 through his date of last insured of December 31, 2016. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine,

status post fusion February 2010; post-traumatic stress disorder; anxiety disorder; attention-deficit disorder; and traumatic brain injury. The ALJ remarked there was medical evidence that established valid diagnoses for chronic deep vein thrombosis (DVT)/scar tissue of left leg, obstructive sleep apnea, bilateral ulnar neuropathy, mild degenerative joint disease right shoulder, mild degenerative joint disease right knee, tinnitus, hiatal hernia, and migraine headaches. The ALJ found, however, that the medical evidence failed to establish more than slight abnormalities, which required little to no ongoing treatment other than medication management. The ALJ explained that he still considered the limiting effects of Plaintiff's non-severe impairments in combination with his severe impairments, but ultimately found that the non-severe impairments did not alter his residual functional capacity.

The ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

The ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform a range of light work as defined under 20 C.F.R. § 404.1567(b), with the following exceptions and/or qualifications: he could lift and carry 20 pounds occasionally and 10 pounds frequently; he could sit, stand, or walk about 6 hours each in an 8-hour workday; he could push and pull as much as he could lift and carry; he could occasionally climb ramps, stairs, ladders, ropes, and scaffolding; he could occasionally balance, stoop, kneel, crouch, and crawl. He can also understand, remember, and carry out instructions for simple tasks. He can make basic decisions, attend and concentrate for extended periods of time, accept instructions and respond

appropriately to changes in routine work settings, in a work setting that did not require more than occasional interaction with coworkers, supervisors, and the public.

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1983 (Tr. 163). On his application for disability benefits Plaintiff alleged an onset date of October 7, 2011 (*Id.*). On his disability report dated April 15, 2019, Plaintiff indicated the following conditions limited his ability to work: PTSD, TBI, spinal fusion, postphlebitic syndrome, obstructed sleep apnea, tinnitus, hiatal hernia, limited motion of ankle, migraine headaches, and tendon inflammation (Tr. 194).

**2. Evidentiary Hearings**

Plaintiff was represented by counsel at his hearing on February 5, 2020. At the hearing, Plaintiff's counsel amended Plaintiff's alleged onset date to November 23, 2015. On November 23, 2015, Plaintiff underwent a C&P examination and his VA disability rating was increased to 100%.

Plaintiff testified at the hearing that he suffered from a blood clot in his left leg in 2010 (Tr. 44-45). Plaintiff was advised he should not have to worry about the clot and he is no longer on blood thinners (Tr. 52). However, Plaintiff testified that the clot caused ongoing issues and his leg would swell if it was not adjusted properly. Plaintiff testified he wore a compression sock on his left leg every day (Tr. 44). During the relevant time, on or before December 31, 2016,

Plaintiff testified he could sit or stand 10 to 15 minutes before his leg would start to swell (Tr. 45-46). Plaintiff could walk a block or two before his leg would start to swell. Plaintiff would elevate his leg above his hips to alleviate the swelling. Plaintiff also testified he would adjust his leg 20-40 times throughout the day (Tr. 46).

With regard to his ability to perform household chores, Plaintiff testified he had a hard time completing the same because his leg would swell (Tr. 50).

A vocational expert also testified at the hearing (Tr. 54). The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings (Tr. 55-56). The VE testified that this person could perform work in the national economy, including a bench worker with 175,000 jobs in the national economy, inspector with 200,000 jobs in the national economy, and packing operator automatic with 95,000 jobs in the national economy (Tr. 56). If this hypothetical person could only stand 10 to 15 minutes at one time or sit 10 to 15 minutes at one time before they needed to change positions, and would need to change positions throughout the workday, the VE testified there essentially would not be any jobs available in the national economy. The VE further testified that if this hypothetical person needed to elevate their legs to hip level for one-half of an 8-hour work day they would not be able to perform work in the national economy because "elevating a body part to that level of elevation the person is not seated in a position for work." (Tr. 58).

### 3. Relevant Medical Records

Plaintiff was diagnosed with chronic deep vein thrombosis (DVT) in his left leg in 2011 (Tr. 408). Plaintiff did not require anticoagulants and his recommended treatment was a compression stocking during the relevant time (Tr. 370). An ultrasound of Plaintiff's deep veins

in his left lower extremity was taken on December 8, 2015, which revealed: multiple echodensities in the CFV, distal FV and PV; echodensitities in the proximal GSV; poor spontaneous and phasic flow in the deep venous system; and unobstructed flow in GSV and deep veins (Tr. 367-68; 582). Plaintiff attended a consultation with a vascular surgeon, Dr. Robert Miller, in January 2016 (Tr. 962). Dr. Miller noted Plaintiff had been off anticoagulation therapy for 2-3 years with no further episodes, and his condition was responding well to compressive stockings (Tr. 962). Dr. Miller further noted Plaintiff remained "very active" and there was no need for further testing or other intervention unless there were new problems (Tr. 962).

More generally, during a follow-up examination with his primary care provider on December 2, 2015, there was no edema, clubbing, cyanosis, or focal tenderness (Tr. 981). Examination revealed Plaintiff's gait was normal and he grossly moved all extremities well (Tr. 981).

Plaintiff reported activities such as riding a motorcycle (Tr. 754, 850), riding a dirt bike (Tr. 319, 545, 745, 784, 799), practicing Tai Kwan Do or karate martial arts (Tr. 312, 545), lifting fifty pounds (Tr. 799), and snow boarding (Tr. 699) between 2016 and 2019.

### 4. C&P Examination Performed by Karen Bruce, NPC

On November 25, 2015, Karen Bruce, NPC, performed a C&P examination on Plaintiff. With regard to Plaintiff's artery and vein conditions, Nurse Bruce noted that per "Hematology/Oncology Consult 6/29/2015 that the veteran's left leg condition continued stable [sic] since off oral Coumadin 3/2015 with no unusual swelling or pain so that continued monitoring was recommended." (Tr. 409). Plaintiff reported difficulty with left leg swelling when standing more than 30 minutes, with repetitive stairs and with walking more than a few blocks (Tr. 409).

Nurse Bruce noted Plaintiff's gait was steady with good mechanics, and that he was able to walk on his toes and heels in tandem, and he was able to raise both knees while keeping good balance with no apparent discomfort (Tr. 411).

Nurse Bruce opined that due to his vascular issues, Plaintiff would be better suited to less physically demanding types of work activities, and he would require reasonable accommodations for alternating periods of sitting and getting up to move about (Tr. 413).

## Analysis

Plaintiff first asserts he has met the requirements to qualify for Social Security disability since November 23, 2015.   This alleged onset date does not appear to be in dispute and is the date considered for the duration of this Memorandum and Order.

Plaintiff argues the ALJ failed to properly evaluate Step 2, and erred in failing to consider the combined effects of all of Plaintiff's impairments, namely, chronic DVT, degenerative disc disease of the lumbar spine, PTSD, anxiety disorder, ADHD, and TBI in the RFC assessment. More specifically, Plaintiff assets the ALJ cherry-picked only the evidence that supported his unfavorable decision, and ignored material evidence, including the results of the December 2015 ultrasound and Nurse Bruce's assessment.

Defendant asserts the ALJ properly considered the effects of DVT on Plaintiff's functioning.  More specifically, Defendant argues the ALJ reasonably determined Plaintiff's severe impairments, and appropriately continued with an analysis of all the relevant evidence to determine Plaintiff's residual functional capacity, consistent with the regulations.

As a preliminary matter, insofar as Plaintiff's brief could be construed as setting forth the argument that the ALJ erred in failing to designate his DVT as a severe impairment, such an

argument is a nonstarter as it is well settled that the failure to designate a particular impairment as "severe" at step 2 does not matter to the outcome of the case as long as the ALJ finds at least one severe impairment, continues on with the analysis, and considers the combined effect of all impairments, severe and non-severe. *Robinson v. Berryhill*, Case No. 16-cv-1203-JPG-CJP, 2017 WL 4652514, at *5 (S.D. Ill. Oct. 17, 2017) (citing *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)) (other citation omitted). Here, the ALJ found Plaintiff suffered severe impairments and considered the combined effect of all identified impairments, including non-severe impairments.

The Court also rejects Plaintiff's argument that the ALJ failed to consider and weigh the evidence as to limitations arising from his DVT. Plaintiff is correct that the ALJ cited the findings of a prior ALJ from October 15, 2015 regarding Plaintiff's functional capacity. Plaintiff also correctly notes that ALJ Worrall found the previous findings persuasive as there did not appear to be any significant change in objective medical findings from that date through December 31, 2016. Plaintiff takes a position contrary to ALJ Worrall, arguing Nurse Bruce's November 2015 opinion constituted a "significant change" in the objective medical findings. More specifically, Plaintiff argues ALJ Worrall failed to consider Nurse Bruce's specific finding that Plaintiff's work activities would require reasonable accommodations "for alternating periods of sitting and getting up to move about." The Court finds the ALJ considered Nurse Bruce's opinion that Plaintiff should do less physically demanding work, and found it only "somewhat persuasive" as it was not fully consistent with the entire record. Indeed, the ALJ also considered Plaintiff's subsequent examinations with his primary care provider wherein he reported being "very active" with unremarkable physical examinations. The ALJ's analysis is sufficient under the relevant statute,

20 CFR § 404.1520c(b)[4].  Further, the Court finds ALJ Worrall need not quote the entirety of Nurse Bruce's opinion, and his summary of her opinion was sufficient.

The ALJ also considered the evidence and the alleged limitations arising from Plaintiff's DVT in his analysis.  The ALJ acknowledged Plaintiff's assertions that standing or sitting more than ten or fifteen minutes caused swelling and that he needed to elevate his legs and change positions to alleviate that swelling.  The Court agrees with Defendant that the ALJ reasonably concluded these allegations were not consistent with the evidence.  The ALJ pointed out that Plaintiff's physical exams were generally unremarkable and showed Plaintiff walked normally, retained normal balance and strength, and exhibited no swelling.  The ALJ also recognized that Plaintiff did not require any treatment for DVT aside from the use of a compression stocking.  Thus, there was no evidence that Plaintiff's treaters, including Nurse Bruce, recommended that Plaintiff elevate his legs.  Finally, the ALJ found Plaintiff did not have additional limitations beyond what is included in the RFC because Plaintiff maintained a high level of activity, including riding a dirt bike and motorcycle, going to concerts, and traveling.

Plaintiff also complains the ALJ did not mention or evaluate the results of his December 8, 2015 ultrasound of his deep veins in the lower left extremity.  Plaintiff concedes he does not understand the medical terminology used in the ultrasound results, but asserts the ALJ also did not understand the results.  Defendant asserts Plaintiff is merely using speculation as to the ultrasound findings to his advantage by accusing the ALJ of missing evidence that might have been important

---

[4] An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies.

to the outcome of the decision. Defendant points out, however, that Dr. Miller, the vascular surgeon, was qualified to understand the ultrasound results and reviewed the same in January 2016, and determined Plaintiff needed no further treatment and he was to continue wearing his compression stocking. This is consistent with other medical evidence specifically mentioned and considered by the ALJ. Thus, the Court finds the ALJ did not err in failing to mention the ultrasound or Dr. Miller's examination findings as the ALJ is not required to specifically address every piece of evidence so long as he builds "an accurate and logical bridge" between the evidence and his conclusions, which ALJ Worrall did here. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: February 2, 2022**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
